JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Defendant-appellant, State Farm Mutual Automobile Insurance Company ("State Farm"), appeals from the judgment of the common pleas court finding that plaintiff-appellee, Bradford Gainer, Jr. ("Gainer"), is entitled to uninsured motorist benefits under the automobile policy issued to him by State Farm. We affirm.
 {¶ 2} Gainer was a passenger in a pickup truck owned by his employer when it was struck by an uninsured motorist. Gainer's employer did not have uninsured motorist coverage on the vehicle, so Gainer sought to recover uninsured motorist coverage under his own insurance policy with State Farm. When State Farm denied his claim, Gainer filed suit seeking declaratory judgment that his policy provides uninsured motorist coverage.
 {¶ 3} After the trial court denied the parties' respective motions for summary judgment, they agreed to a bench trial. The evidence to be considered included deposition testimony, the evidence submitted with the summary judgment motions, and filed stipulations of fact.
 {¶ 4} The evidence demonstrated that at the time of the accident, Gainer was employed as an hourly employee by Area Wide Protective Inc., which contracts traffic directing services with various companies that perform road work. Gainer's job as a traffic controller was to stand on the roadway with a "Stop/Slow" sign and direct traffic while work was being done on the roadway. *Page 4 
 {¶ 5} Gainer's paid work day began when he met the customers at their place of business. He would then ride in an Area Wide vehicle to the job site on the roadway, where he directed traffic. Depending on the customer's location, Gainer sometimes drove his personal vehicle to Area Wide, and then rode with his co-worker, Brian Ward, in a company vehicle assigned to Ward, to the customer's location. Other times, Ward picked Gainer up at his home and drove him in a company vehicle to the customer's location. From there, Gainer would ride in the company vehicle to the job site. Gainer testified in his deposition that for the past four years, he had ridden in a company vehicle every time he went from a customer's location to a job site.
 {¶ 6} Gainer testified in deposition that the company vehicle used on each job varied, depending on the job. At the time of the accident, Gainer was riding in the truck he and Ward used approximately 50% of the time. The accident occurred before work at approximately 6:30 a.m. on February 19, 2005 as Ward was driving Gainer to a customer's location, when an oncoming vehicle crossed the center line and hit the truck they were riding in.
 {¶ 7} Although Gainer's State Farm policy provides uninsured motorist coverage, it excludes coverage for bodily injury that occurs while he is "occupying a motor vehicle owned by, leased to, furnished to, oravailable for the regular use of you, your spouse, or any relative if that motor vehicle is not insured for this coverage under this policy." *Page 5 
 {¶ 8} The trial court found that this exclusion did not apply to Gainer because the vehicle he was riding in at the time of the accident was available for his use only 50% of the time and, therefore, it rendered judgment in favor of Gainer. We affirm the trial court's judgment in favor of Gainer, but for reasons other than those relied on by the trial court.
 {¶ 9} Whether a vehicle is furnished or available for "regular use" is a fact-specific inquiry and determined on a case-by-case basis.Thompson v. Preferred Risk Mut. Ins. Co. (1987), 32 Ohio St.3d 340, 343. In Thompson, the Supreme Court of Ohio held that a vehicle was not furnished for the driver's regular use, even though he drove it periodically, where someone other than the driver maintained "sole dominion and control" over the vehicle. The facts demonstrated that Thompson was involved in a collision while he was driving a car that belonged to his girlfriend, whom he lived with. In considering whether the "regular use" exception applied to Thompson's uninsured motorist claim, the Supreme Court of Ohio noted that although Thompson used his girlfriend's car on various occasions, she maintained "sole dominion and control" over the car. She had the only set of keys to the car, and Thompson was not free to use the car any time he wanted to, but had to ask her permission and obtain the keys from her before he could drive it.
 {¶ 10} Likewise, it is apparent that Gainer never possessed or controlled the vehicle he was riding in when the accident occurred. The vehicle had been issued to Gainer's co-worker, Brian Ward, and was available for Ward's personal and *Page 6 
business use. Although Ward sometimes gave Gainer rides to work in the vehicle, and rides between customer locations and job sites when he and Gainer were on the job, it is clear that Ward, not Gainer, had sole dominion and control over the vehicle. There is no evidence that Gainer was allowed to drive the vehicle without Ward's permission, or, in fact, that he ever drove Ward's vehicle at all. Ward maintained "sole dominion and control" over the vehicle.
 {¶ 11} In Thompson, the Ohio Supreme Court concluded that the term "furnished for the regular use" is not synonymous with the term "regular use." Id. at 343. State Farm, however, would have us construe the terms synonymously. It argues that because Gainer regularly used Area Wide vehicles while on the job, the vehicle he was riding in at the time of the accident was "furnished for his regular use." We are not persuaded, because the accident occurred while Gainer was off duty.
 {¶ 12} Kenney v. Employers Liability Ins. Corp. (1966),5 Ohio St.2d 131, and Pickering v. Nationwide Mut. Ins. Co., Cuyahoga App. No. 82512, 2003-Ohio-4076, cited by State Farm, are easily distinguishable from this case, because they involve employees who were on duty operating work vehicles when the accidents occurred. In Kenney, a police officer was injured on duty while riding in a police cruiser. The Ohio Supreme Court held that, as a matter of law, the police cruiser was a vehicle furnished for the officer's regular use, because he was assigned to work in a police vehicle on 122 of 164 working days, and therefore, the officer's injuries were *Page 7 
excluded from coverage under the "regular use" exclusion of his policy. In Pickering, this court held that a mail carrier's injuries, which also occurred while he was on the job, were excluded from coverage, because he was driving a truck which was specifically provided to him by his employer and which he used every day to perform the duties of his employment.
 {¶ 13} The facts of this case are different. The vehicle involved in the accident was specifically provided to Ward, not Gainer. Moreover, the accident did not occur on the job, but while Gainer was off duty. No company vehicle was "furnished" for Gainer's off-duty use and he was not performing any duties of his employment when the accident occurred. He was simply receiving a ride to work in a vehicle that he neither controlled nor possessed. Accordingly, Kenney and Pickering are not on point.
 {¶ 14} In reliance on Kenney, State Farm also argues that the trial court erred in limiting its analysis to the fact that the vehicle involved in the accident was available for Gainer's use less than 50% of the time. In Kenney, the Ohio Supreme Court made clear that a regular use exception may apply where the insured is injured while using any one of a group of vehicles furnished by the employer for the insured's regular use. State Farm's argument fails, however, because we have already concluded that Area Wide did not furnish any vehicle, much less a group of vehicles, for Gainer's regular off-duty use. *Page 8 
 {¶ 15} We hold, as a matter of law, that because the accident occurred off duty in a vehicle not furnished or available for Gainer's regular use, the regular use exception of his insurance policy is not enforceable.
 {¶ 16} Appellant's assignment of error is overruled.
Affirmed.
It is ordered that appellees recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 PATRICIA A. BLACKMON, J. MARY J. BOYLE, J., CONCUR *Page 1